UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VARCO LP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-1481 |
| | § | |
| CLYDE H BOHNSACK, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Pending before the Court is the third party plaintiff and declaratory defendant's, Clyde H. Bohnsack ("Bohnsack"), motion to dismiss the declaratory plaintiff's, Varco L.P. ("Varco"), request for declaratory relief (Docket Entry No. 68). In response, Varco submitted a statement of non-opposition to this motion (Docket Entry No. 84). Further pending before the Court is the third-party defendant's, Guy McClung ("McClung"), motion for summary judgment (Docket Entry No. 69). Bohnsack submitted a response to this motion (Docket Entry No. 82) and McClung filed a reply to the response (Docket Entry No. 91). Still further pending before the Court is Varco's motion to exclude the testimony of Bohnsack's expert, Nils E. Pedersen ("Pedersen") (Docket Entry No. 70). Bohnsack submitted a response to this motion (Docket Entry No. 86) and Varco filed a reply to the response (Docket Entry No. 89). Also pending before the Court is Bohnsack's motion for partial summary judgment regarding 35 U.S.C. § 102(b)'s "On Sale" bar (the "on sale bar") (Docket Entry No. 71). Varco submitted a response to this motion (Docket Entry No. 78), Bohnsack filed a reply to the response (Docket Entry No. 90) and Varco filed a surreply (Docket Entry No. 93). Lastly, pending before the Court is Varco's motion for summary judgment on Bohnsack's claims against it (Docket Entry No. 72).

Bohnsack submitted a response to this motion (Docket Entry No. 85).    Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Bohnsack's motion to dismiss Varco's request for declaratory relief, GRANTS in-part and DENIES in-part McClung's motion for summary judgment, GRANTS Varco's motion to exclude Pedersen's testimony, DENIES Bohnsack's motion for summary judgment regarding the on sale bar and GRANTS in-part and DENIES in-part Varco's motion for summary judgment.

## II.    Factual Background

Varco manufactures equipment used in oil and gas drilling.  Bohnsack is an inventor who, in 2003, approached Varco regarding the manufacture and marketing of a device he invented.  The present dispute arose from a disagreement regarding the licensing, patenting and ownership of Bohnsack's invention.  In the instant lawsuit, Bohnsack presents causes of action for tortious interference with prospective contractual relations, misappropriation of trade secrets and fraud against Varco and Varco's patent attorney, McClung.

The invention in question was called the "Pit Bull."  When Bohnsack originally contacted Varco, the Pit Bull had not been manufactured or proven to work.  The parties agreed to collaborate on this project and entered into a secrecy agreement (the "secrecy agreement") protecting their respective proprietary information.  From 2003 to 2004, Bohnsack and Varco worked together to build a prototype of the invention.  Preliminary field testing began in 2005.

In 2005, Varco hired McClung to draft a patent application claiming the Pit Bull (the "patent application").  During this time, McClung represented Varco, but not Bohnsack.  While drafting the patent application, McClung envisioned several (allegedly independently patentable) improvements on the Pit Bull.  Accordingly, McClung drafted the patent application to claim the Pit Bull (as originally described), plus McClung's improvements.  The patent application (No.

11/254,064) was filed on October 19, 2005.  At that time, the patent application did not contain the required inventors' declaration, which pertains to, among other things, recognition of the true inventors of the claimed invention.

On November 8, 2005, Bohnsack signed the declaration, stating that he and McClung were the "original, first and joint inventors" of the claimed invention.  On November 11, 2005, Bohnsack expressed concerns to McClung over McClung's inclusion as an inventor on the patent application.  McClung responded with an email, in which he stated that the declaration would not be filed until the inventorship issue was "sorted out." After limited further communication with Bohnsack, on March 6, 2006, McClung filed the declaration with the United States Patent and Trademark Office (the "USPTO").  Prior to this, McClung assigned his rights in the patent application to Varco I/P, Inc., Varco's intellectual property management company.

In 2007, Varco and Bohnsack began negotiations regarding ownership of the rights to the Pit Bull.  The parties exchanged proposals, but never agreed to a contract.  In June of 2007, Varco stated that it would pursue the Pit Bull no further.  Subsequently, Bohnsack built, and put into service, several Pit Bull units. On March 17, 2008, the USPTO issued an office action stating that the Pit Bull, as claimed in the patent application, was not patentable.

## III.   Contentions

### A.     The Third Party Plaintiff/Declaratory Defendant's Contentions

Initially, Bohnsack asserts that Varco's request for declaratory judgment should be dismissed.  He supports his motion by stating that dismissal will prevent confusion on trial issues and burdens of proof.

Regarding McClung's motion for summary judgment, Bohnsack argues that he has proffered evidence on each element of his claims.  Specifically, with regard to his tortious

interference claim, he states that he has evidenced a reasonable probability of contract formation, that McClung's interference was intentional, that McClung knew that his acts would interfere with his potential contract with Varco and that Bohnsack was injured by those acts.  Regarding his misappropriation claim, Bohnsack argues that he has proffered evidence of trade secrets that were misappropriated by Bohnsack.  On the issue of his fraud claims, Bohnsack asserts that he has evidenced that McClung lied to him with the intent to deceive and that Bohnsack relied on those lies to his detriment.  Lastly, Bohnsack argues that the filing of his present claims was timely.  The same arguments are, in significant part, asserted by Bohnsack in his response to Varco's motion for summary judgment.

With regard to Varco's motion to exclude Pedersen's expert testimony, Bohnsack argues that this testimony is appropriate.  Initially, he states that Pedersen's opinion on inventorship is proper because:  (a) it does not speak to an ultimate issue at bar, and (b) Pedersen proffers appropriate rebuttal testimony.  Second, Bohnsack asserts that Pedersen should be allowed to speak to patentability because he has sufficient knowledge of the Pit Bull (and the pertinent field of technology) to give informed testimony.

On the issue of 35 U.S.C. § 102(b)'s "On Sale" bar (the "on sale bar"), Bohnsack states that he should be granted summary judgment that (with regard to the patent application) Varco made an offer to sell the claimed invention more than one year prior to filing.  On this topic, Bohnsack proffers evidence and argues that he has established that there is no fact question on this issue.

**B.     The Third Party Defendant's Contentions**

In his motion for summary judgment, McClung asserts that Bohnsack has presented no evidence to support the elements of the three remaining causes of action:  tortious interference

with prospective contractual relations, misappropriation of trade secrets and fraud.  Furthermore, McClung states that both the tortious interference and misappropriation claims are barred by the pertinent statutes of limitations.

### C.    The Declaratory Plaintiff's Contentions

With regard to Bohnsack's assertion that Varco's request for summary judgment should be dismissed, Varco does not present an opposition.  However, in making this statement, it does not concede the correctness of any points made in Bohnsack's motion

Varco also asserts that Pedersen (Bohnsack's expert) should have portions of his proposed testimony excluded.  Initially, Varco states that his opinion on inventorship is irrelevant and is premised on incorrect assumptions of law.  Further, it maintains that Pedersen is not qualified to give expert testimony on patentability and the on sale bar.

With regard to Bohnsack's motion for summary judgment pertaining to the on sale bar, Varco asserts that this motion should be denied.  Specifically, it maintains that it has proffered sufficient summary judgment evidence to raise a fact question on this topic.

Varco asserts that summary judgment is proper on Bohnsack's claims against it.  To this end, it states that there is no evidence supporting multiple elements of Bohnsack's tortious interference, misappropriation and fraud claims.

## IV.    Standard of Review

### A.    Motion for Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The [movant] bears the initial burden of identifying those portions of the

pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)).   Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).   The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).   The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  Fed. R. Civ. P. 56(e).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625.   "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party."  *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004).   Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

### B.       Requirements under the Federal Rules of Evidence and *Daubert.*

The admissibility of expert testimony in federal court litigation is governed by Rules 104 and 702 of the Federal Rules of Evidence.  Specifically, Rule 104(a) provides that "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of

evidence shall be determined by the court . . . ."  Fed. R. Evid. 104(a).  Rule 702 further provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court reasoned that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  Pertinent evidence based on scientifically valid principles will satisfy [these] demands."  509 U.S. 579, 597 (1993).  The party seeking to have the expert testimony admitted, however, bears the burden of proving by a preponderance of the evidence that the expert witness is qualified and that his or her testimony is reliable, but not that the expert's testimony is correct.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc), *cert. denied*, 526 U.S. 1064 (1999).  This requires "some objective, independent validation of the expert's methodology."  *Id.*

In *Daubert*, the Supreme Court also discussed factors that could prove helpful in establishing the reliability of a designated expert's theory or technique, including, but not limited to, whether the expert's theory or technique:  "(1) can be or has been tested; (2) has been subject to peer review and publication; (3) has a known or potential rate of error . . . ; and (4) is generally accepted in the relevant scientific community."  *Burleson v. Tex. Dept. of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004) (citing *Daubert*, 509 U.S. at 593–94)).  In *Kumho Tire,* a case decided after *Daubert*, "the Supreme Court emphasized that the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing

reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999)).  The court further reasoned that the trial judge's ultimate responsibility as the gatekeeper "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* (quoting *Kumho Tire,* 526 U.S. at 152).

**V.     Analysis & Discussion**

**A.     Bohnsack's Motion to Dismiss**

Bohnsack argues that Varco's request for declaratory relief should be dismissed.   To this end, he states that, since a counterclaim was filed that embodies the issues raised in Varco's original complaint, dismissal is appropriate "in order to eliminate any possible confusion regarding trial issues and burden of proof."  Without conceding the correctness of Bohnsack's arguments, Varco agrees that dismissal of its request for declaratory judgment is appropriate. Accordingly, the Court grants Bohnsack's motion to dismiss.

**B.     McClung's Motion for Summary Judgment**

McClung argues that summary judgment is appropriate on each of Bohnsack's remaining claims against him.  Further, McClung asserts that Bohnsack's claims for tortious interference with prospective contractual relations and misappropriation of trade secrets are barred by the applicable statutes of limitations.  As discussed below, the Court finds that summary judgment is appropriate on the misappropriation claim and McClung is correct that the statute of limitations has run on Bohnsack's tortious interference cause of action.  All other requested relief is denied.

### 1.    Trade Secret Misappropriation

"To prevail on [a] claim for misappropriation of trade secrets, [a plaintiff] must show: (1) the existence of a trade secret; (2) a breach of a confidential relationship or improper discovery of the trade secret; and (3) use of the trade secret without authorization." *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003) (citing *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)).  With regard to this cause of action, McClung asserts that summary judgment is appropriate because Bohnsack cannot, as a matter of law, "prove any of the three elements of his claim of misappropriation of trade secrets . . . ."  As described below, the Court finds that Bohnsack has not raised a fact question on the second element of this cause of action, and accordingly, summary judgment is proper.

With regard to Bohnsack's assertion that McClung committed "a breach of a confidential relationship or improper discovery of [a] trade secret," McClung maintains that "it was [legal] for him to receive the alleged trade secrets, and lawful for Varco to disclose them to him . . . ."  The Court construes this assertion to be an allegation that Bohnsack has proffered no evidence of a breach of a confidential relationship or an improper discovery.  The Court agrees with this position.

In response, Bohnsack does not directly dispute McClung's position, nor does he point to evidence that raises a fact question on this issue.  Instead, Bohnsack asserts that "McClung was not authorized to misappropriate trade secrets" under the secrecy agreement.  Assuming, *arguendo*, that this statement is correct, this is no evidence of "a breach of a confidential relationship or improper discovery of [a] trade secret."  Specifically, with regard to this determination, the Court notes that: (1) McClung was not a party to the secrecy agreement and

thus could not have breached any confidential relationship created thereunder,[1] and (2) Bohnsack proffers no evidence that his trade secrets were disclosed.  Premised upon the above discussion, the Court finds that summary judgment on this cause of action is appropriate.

## 2.    Fraud

"The elements of common law fraud under Texas law are (1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury."  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212–13 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  McClung argues that summary judgment on Bohnsack's fraud claim is appropriate for four reasons:   (1) "McClung's statements to Bohnsack were true;" (2) "[t]here is no evidence that McClung made [false statements] with the intention that Bohnsack should act upon them;" (3) "Bohnsack did not rely on McClung's statements;" and (4) "[t]here is no evidence that Bohnsack suffered harm due to McClung's alleged actions."  The Court disagrees.

### a.   Truthfulness of McClung's Statements

McClung asserts that his statement to Bohnsack that "I will not file the Declaration in the pending US application until we have sorted all this out" was true.  In support of this contention,

---

[1] *See Globex Intern., Inc. v. DiSabato*, No. 3:05-CV-1814-N, 2008 WL 5586053, at *1 (N.D. Tex. Aug. 19, 2008). *DiSabato* provides, in pertinent part, that:

> Globex claims that DiSabato satisfied the second element [of misappropriation of a trade secret] because he discovered Globex trade secrets while working for The Sports Group LLC, a company that had a confidentiality agreement with Globex. A confidential relationship  between Globex and Sports Group LLC is not a confidential  relationship between Globex and an employee of Sports Group LLC, and the latter relationship does not support a claim for misappropriation of trade secrets.

*Id.* (citing *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 377 (5th Cir. 1999)).

McClung states that "[i]n saying that this was all to be 'sorted out' [he] was referring to a study of the facts . . . to determine whether Bohnsack had previously invented what McClung thought he had invented . . . ."  Bohnsack disagrees, arguing that the phrase "sorted out" necessarily connotes some bilateral action/communication between the parties, which never occurred.  The Court finds that, premised upon common usage of the phrase "sorted out," some ambiguity exists regarding the meaning of McClung's statement and therefore, summary judgment is not proper on this issue.  *See APS Capital Corp. v. Mesa Air Group, Inc.*, 580 F.3d 265, 272 (5th Cir. 2009).

### b.  Intention that Statements be Acted Upon

McClung asserts that "[t]here is no evidence that [he] made [the above-described statement] with the intention that Bohnsack should act upon [it.]"  Bohnsack responds that McClung intended his statement to prevent Bohnsack from protecting his interests (e.g. not hire an attorney or take other proactive measures).

"Because it is difficult to prove intent to defraud from direct evidence, a jury may consider circumstantial evidence of fraudulent intent and draw reasonable inferences therefrom."  *U.S. v. Tarango*, 396 F.3d 666, 678 (5th Cir. 2005) (Clement, J., dissenting) (citations omitted); *Walker v. F.D.I.C.*, 970 F.2d 114, 122 (5th Cir. 1992).  The Court finds that, premised upon the present summary judgment evidence that McClung (allegedly) misled Bohnsack and assigned his interest in the patent application to Varco (McClung's employer), a genuine issue of material fact exists regarding whether McClung intended for his allegedly false statements to be acted upon.  Thus, summary judgment is not proper on this issue.

### c.  Bohnsack's Reliance on McClung's Statements

McClung argues that "Bohnsack did not justifiably rely on McClung as required . . . . [A] plaintiff has a duty to use reasonable care to protect his interests if he knows of facts that

would lead a reasonably prudent person to investigate."  The Court disagrees.  To the extent that Bohnsack has evidenced (a) that McClung indicated that he would not pursue patent protection until the parties "sorted out" their differences and (b) that Bohnsack did not protect his intellectual property rights, detrimental reliance has been shown.   Specifically, summary judgment evidence is present that Bohnsack, acting in reliance on McClung's assertions, failed to fully protect his interests (e.g. by hiring an attorney).  This is sufficient evidence that Bohnsack relied on McClung's statements.  As such, summary judgment is not proper on this issue.

### d.  **Injury to Bohnsack**

McClung asserts that "[t]here is no evidence that Bohnsack suffered harm due to McClung's alleged actions."  The Court disagrees.  As discussed in the previous subsections, Bohnsack has proffered summary judgment evidence that, but for McClung's alleged false statements, Bohnsack would have protected his interest in the Pit Bull.  This failure harmed Bohnsack (e.g. by precluding Bohnsack from protecting his interests in the (potentially lucrative) Pit Bull).   Therefore, the Court finds that a fact question exists on this issue and summary judgment is not proper.

### 3.   **Tortious Interference and the Statute of Limitations**

A two year statute of limitations applies to Bohnsack's tortious interference with a prospective contract claim.  *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, No. 05-1076, 2009 WL 795668, at *3 (Tex. Mar. 27, 2009).  The current lawsuit was filed in November of 2008, and accordingly, the present claim is barred if the statute of limitations began to run before November of 2006.  The Court finds that this claim is not timely.

With regard to tortious interference and the pertinent statute of limitations, the Fifth Circuit has stated:

"[F]or the purposes of application of the statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy . . . . Put another way, a cause of action can generally be said to accrue when the wrongful act effects an injury". *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) (internal quotation marks and citation omitted); *see also Computer Associates Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 458 (Tex. 1996) ("The traditional rule in Texas is that a cause of action accrues and the two-year limitations period begins to run as soon as the owner suffers some injury, regardless of when the injury becomes discoverable").

*Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 214 (5th Cir. 1999)

(internal citations omitted) (applying Texas law).

The patent application—which listed McClung as an inventor—was recorded at the USPTO on October 19, 2005.  Subsequently, on March 6, 2006, McClung filed Bohnsack's declaration stating that McClung was a proper inventor.  Either of these occurrences could (potentially) be deemed the event that granted McClung/Varco an interest in the patent application and therefore, defeated any necessity for Varco to contract with Bohnsack for control of the Pit Bull.  Thus, either of these dates could be the time at which a wrongful act caused Bohnsack's injury, and accordingly, the statute of limitations began to run in either October of 2005 or March of 2006.  Both of these dates are more than two years prior to the filing of the present lawsuit.  Therefore, the instant claim is not timely and must be dismissed.

### C.     Varco's Motion to Exclude the Expert Testimony of N.E. Pedersen

Pedersen, a patent attorney, has been proffered by Bohnsack as an expert witness.  Varco asserts that Pedersen's opinions do not comply with the standard set forth in *Daubert* and Federal Rule of Evidence 702 and therefore should be excluded.  Specifically, Varco states that:  (1) "Mr. Pedersen's opinion regarding joint inventorship should be excluded as irrelevant and resting on incorrect legal assumptions," and (2) "Mr. Pedersen's opinions regarding patentability

and an alleged 'On Sale' bar should be excluded because he is not qualified and his analysis is unreliable."  The Court agrees.

### 1.    Pedersen's Opinion on Joint Inventorship

With regard to Pedersen's opinion on joint inventorship, Varco states that, in giving his opinion on this issue, "Pedersen does nothing more than apply 35 U.S.C. § 116[2] and the interpretive case law" and "does not cite, analyze, or apply any unique scientific knowledge, technical principles, or expertise . . . ."  (footnote inserted.)  Therefore, Varco maintains that Pedersen's testimony improperly suggests how the law ought to be applied to the facts established at trial.

With regard to patent law, "[i]nventorship is a question of law."  *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010).  Pertinent to this issue, the Fifth Circuit has stated that:

> '[T]here is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.'  Plainly stated, '[an expert's] opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.'

*Fisher v. Halliburton*, Nos. H-05-1731, H-06-1971, H-06-1168, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (quoting *Askanase v. Fatjo,* 130 F.3d 657, 672–73 (5th Cir. 1997); *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)) (internal citations omitted).[3]

---

[2] Section 116 provides, in pertinent part, that:
> When an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise provided in this title. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

[3] In patent cases it is appropriate to apply the law of the regional circuit to evidentiary questions that are not unique to patent law and Federal Circuit law to patent topics.  *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390–91 (Fed. Cir. 2003).

Accordingly, the Court will not allow Pedersen to testify as to the issue of inventorship.  To this extent, the current motion is granted.

### 2.    Pedersen's Opinion on the On Sale Bar

Varco argues that Pedersen's testimony regarding patentability and the on sale bar should be excluded because such opinions necessitate an expert that is skilled in the pertinent art, which Pedersen is not.  The Federal Circuit has addressed this issue in *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (2008).  Specifically, the court stated:

> [The defendant] argued that Mr. Bliss [its expert witness] was qualified [as an expert] because he "is a patent attorney with extensive experience in patent law and procedure," and that his testimony was admissible because courts may allow patent law experts to testify on "general procedures involved in the patent application process."
>
> * * *
>
> [The plaintiff] argues that "[a]lthough [the defendant] refers to Mr. Bliss as a technical expert, he has no technical experience in the [pertinent technical field] and practiced as an engineer for but a year and a half in unrelated areas. He was not qualified at trial as a technical expert." [The defendant] responded that "reliance on a 'patent expert' for 'an opinion on the ultimate question,' such as infringement or invalidity, is entirely appropriate."
>
> We conclude that the district court abused its discretion in denying [the plaintiff's] motion in limine; Mr. Bliss is not qualified to testify as an expert witness on the issues of infringement or validity. These issues are analyzed in great part from the perspective of a person of ordinary skill in the art, and testimony explaining the technical evidence from that perspective may be of great utility to the factfinder.[4]
>
> * * *

---

[4] Patent claims are construed from the perspective of one of ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir.2005). For the purposes of the doctrine of equivalents, identification of the claim elements as well as the determination of infringement itself are done from the perspective of one of ordinary skill in the art. *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). What a prior art reference discloses or teaches is determined from the perspective of one of ordinary skill in the art. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir.1991) ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."). Whether a patent claim would have been obvious in light of prior art references is determined from the perspective of one of ordinary skill in the art. *See KSR*, 127 S.Ct. at 1742 (2007) (emphasizing that, in determining whether a patent combining known elements would have been obvious, the focal question is whether the combination was obvious to a person with ordinary skill in the art).

Mr. Bliss's pre-trial expert report details his years of experience as a patent attorney, including preparation of opinions on invalidity and knowledge of USPTO practice and procedure. The report does not present Mr. Bliss as having any personal technical experience, or skills in the [pertinent technical field.] Although Mr. Bliss also stated in his report that he has experience in "the [pertinent technological] field," support for this statement was only in the context of preparing and prosecuting patent applications for inventions in the [pertinent] field and in testifying "as an expert on patent law and patent office procedure" in connection with a separate suit also related to the [pertinent] field. Nor does his appended curriculum vitae reveal any relevant technical experience with [the pertinent technology.]

* * *

Admitting testimony from a person such as Mr. Bliss, with no skill in the pertinent art, serves only to cause mischief and confuse the factfinder. Unless a patent lawyer is also a qualified technical expert, his testimony on these kinds of technical issues is improper and thus inadmissible. Because Mr. Bliss was never offered as a technical expert, and in fact was not qualified as a technical expert, it was an abuse of discretion for the district court to permit him to testify as an expert on the issues of noninfringement or invalidity.

*Id*. at 1360–62 (internal citations omitted).

In the present case, Pedersen has been presented solely as a patent law expert, as opposed to one of ordinary skill in the pertinent technological field. Accordingly, the Court finds that, consistent with *Sundance v. DeMonte*, Pedersen is not qualified to give expert testimony on issues of patentability and the on sale bar, and therefore, his testimony on those topics must be excluded.

### D.    Bohnsack's Motion for Summary Judgment

Bohnsack asserts that "Varco made a commercial offer for sale of the Pit Bull to Halliburton on October 25, 2005, thereby creating an October 25, 2006 on-sale bar." Varco counters that, at the time of the alleged offer to sale, the Pit Bull was insufficiently developed to trigger the on sale bar. As discussed below, the Court finds that Bohnsack's request for summary judgment on this topic is not proper.

This present issue has been described by the Federal Circuit as such:

> The Supreme Court has established a two-part test for the on-sale bar set forth in 35 U.S.C. § 102(b). Under this test, an inventor is barred from obtaining a patent where the patent application is filed more than one year after (1) the product was sold or offered for sale and (2) the invention is ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). A patentee that demonstrates experimental use may overcome the application of the on-sale bar. *See EZ Dock, Inc. v. Schafer Sys., Inc.*, 276 F.3d 1347, 1352 (Fed. Cir. 2002).

*Del. Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010). A product is ready for patenting if it "ha[s] been reduced to practice prior to the critical date [or if] prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Sparton Corp. v. U.S.*, 89 Fed. Cl. 196, 219 (2009) (internal quotations and citations omitted).  "An invention is reduced to practice when it works for its intended purpose.  An invention is said to work for its intended purpose when there is a demonstration of its workability or utility."  *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1366–36 (Fed. Cir. 2008).

In its argument that summary judgment is inappropriate on this issue, Varco points to various pieces of evidence supporting the conclusion that, as of October 25, 2005, the Pit Bull did not work for its intended purpose and therefore, could not have triggered the on sale bar.  In example, Varco cites to presentation slides from October 11, 2006, which indicate that the parties needed to "[d]etermine if the Pit Bull can keep solids from settling in the # 2 mud compartment . . . ."  This is evidence that the parties were still attempting to establish that the Pit Bull worked for its intended purpose at that time.  This support, in conjunction with other similar evidence cited by Varco, precludes the court from determining that summary judgment is proper regarding whether the Pit Bull was offered for sale to Halliburton on October 25, 2005.  Thus, Bohnsack's motion for summary judgment must be denied.

### E.    Varco's Motion for Summary Judgment

#### 1.    Fraud

For the reasons set forth in the above denial of McClung's motion for summary judgment regarding Bohnsack's fraud claim, Varco's motion for summary judgment on this issue is denied.

#### 2.    Trade Secret Misappropriation

With regard to Bohnsack's cause of action for trade secret misappropriation, Varco solely asserts that, because it "did not use the Pit Bull or any Bohnsack information except when it was authorized to do so, Varco is entitled to summary judgment that it has not misappropriated any alleged trade secret of Bohnsack."  To this end, it maintains that it was authorized to file a patent application for the Pit Bull and therefore, any use of Bohnsack's intellectual property related to that application was justified.  The Court disagrees.

On this topic, Bohnsack cites to the secrecy agreement signed between Varco and himself, which states that "Varco agree[s] that all Information obtained . . . from Bohnsack . . . shall remain the property of Bohnsack."  When McClung was added as an inventor to the Pit Bull application, Varco obtained an undivided interest in that patent application (and the information claimed therein).  Premised upon this evidence, a fact question exists regarding whether all of Varco's uses of Bohnsack's information were authorized.  Accordingly, summary judgment is not appropriate on this issue.

#### 3.    Tortious Interference with a Prospective Business Relation

As discussed above with regard to McClung's motion for summary judgment, Bohnsack's claim for tortious interference with a prospective business relation is not timely. Accordingly, this cause of action is dismissed.

VI.      **Conclusion**

Based on the foregoing discussion, the Court hereby GRANTS Bohnsack's motion to dismiss Varco's request for declaratory relief, GRANTS in-part and DENIES in-part McClung's motion for summary judgment, GRANTS Varco's motion to exclude the testimony of Pedersen, DENIES Bohnsack's motion for summary judgment regarding the on sale bar and GRANTS in-part and DENIES in-part Varco's motion for summary judgment.

It is so **ORDERED.**

SIGNED at Houston, Texas this 20th day of July, 2010.

_____
Kenneth M. Hoyt
United States District Judge